UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

ROBERTO SANTOS GUZMAN,

                              Plaintiff,

            -v.-                                        **NEGOTIATED SETTLEMENT**
                                                        **AGREEMENT AND RELEASE**

THE MORGAN GROUP LLC a/k/a MORGAN
GROUP and a/k/a MORGAN GROUP LLC,                       Case 1:22-cv-07271 (KPF)
600 TRINITY LLC, and SCOTT MORGAN,

                              Defendants.

------------------------------------------------------------------------x

        Plaintiff Roberto Santos Guzman ("Guzman") and Defendants The Morgan Group LLC
("TMG"), 600 Trinity LLC ("Trinity"), and Scott Morgan ("Morgan" and, collectively with TMG
and Trinity, the "Defendants") (each referred to herein individually as a "Party," and collectively
as the "Parties") desire to settle and resolve fully all claims that were or could have been brought
by Plaintiff in this action, and have reached a compromise settlement agreement to dispose of all
such claims, including but not limited to, each of Plaintiff's claims against all Defendants in the
lawsuit captioned *Roberto Santos Guzman v. The Morgan Group LLC*, *et al*., Civil Case No. 1:22-
cv-07271 (KPF), pending in the United States District Court for the Southern District of New York
(the "Lawsuit"). The Parties recite, agree and enter into this Agreement as follows:

        **WHEREAS**, Plaintiff was employed at a residential apartment building located at 600
Trinity Avenue, Bronx, New York (the "Property");

        **WHEREAS**, Trinity sold the Property on or about August 16, 2021, and Plaintiff's
employment with TMG concluded effective on that date;

        **WHEREAS**, Plaintiff retained counsel and, through counsel, asserted claims relating to
his employment, including, but not limited to, claims for underpaid minimum wage, underpaid
overtime wages, liquidated damages, penalties and interest under the Fair Labor Standards Act
("FLSA") and New York Labor Law ("NYLL");

        **WHEREAS**, after negotiations, and to finally resolve Plaintiff's claims in the Lawsuit, the
Parties have agreed to enter into this Negotiated Settlement Agreement and Mutual General
Release (the "Agreement") as a full, final and complete resolution of this matter; and

        **WHEREAS**, the Parties desire to set forth all of the terms and conditions of their resolution
in this Agreement.

**NOW, THEREFORE**, based upon their mutual promises and other good and valuable consideration, the Parties agree as follows:

    **1.**    **Incorporation of Recital Paragraphs and Additional Definitions**. The statements and definitions contained in the above recital paragraphs are incorporated herein with the same force and effect as if fully set forth herein at length. In addition, the terms set forth below shall have the following definitions:

    1.1.    "Effective Date" means the date this Agreement is effective, which shall occur when all of the following events have occurred:

        a.    Counsel for Defendants' receipt of this Agreement executed by Plaintiff;

        b.    Counsel for the Defendants' receipt of an IRS Form W-4 executed by Plaintiff;

        c.    Counsel for the Defendants' receipt of an IRS Form W-9 executed by Plaintiff;

        d.    Counsel for the Defendants' receipt of an IRS Form W-9 executed on behalf of Rapaport Law Firm, PLLC;

        e.    Counsel for the Defendants' receipt of an IRS Form W-9 executed on behalf of Miller Law, PLLC; and

        f.    Counsel for the Parties' receipt of notice of the Court's approval of this Agreement and its terms.

    1.2.    "Paragraph" means a paragraph of this Agreement, unless otherwise specified.

    1.1.    "Release of Claims by Plaintiff" means the waiver of claims set out in Paragraph 4 of this Agreement.

    1.2.    "Released Claims" means any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, charges, complaints, appeals and demands whatsoever, in law or equity, which Plaintiff had, has or may have against Releasees, as of the date of Plaintiff's execution of this Agreement, pertaining to Plaintiff's wages, hours worked, wage payments, and records related to such wages and hours, including attorneys' fees for such claims, whether known or unknown, asserted or unasserted, under federal, state, or local law or regulation, including, but not limited to the Fair Labor Standards Act and the New York Labor Law, based upon any conduct occurring from the beginning of time up to and including the date of Plaintiff's execution of this Agreement.

    1.3.    "Releasees" means each defendant named in the Lawsuit, including TMG, Trinity, Morgan, and, where applicable, their respective direct and indirect parent

companies and their subsidiaries, divisions, current and former owners, equity holders, officers, directors, principals, shareholders, trustees, administrators, executors, agents, attorneys, employees, former employees, insurers, reinsurers, predecessors, successors and assigns, and their administrators and fiduciaries. "Releasees" includes the immediate family members and each predecessor, successor, and assign of each of the people and entities mentioned in this Paragraph.

**2.      Settlement Sum; No Other Payments**. In consideration for Plaintiff's timely signing this Agreement and complying with the promises made by Plaintiff contained in this Agreement, including the releases and waivers of claims set forth herein, Defendants agree to provide Plaintiff with the total settlement sum (the "Settlement Sum") of Seventy Thousand Dollars and No Cents ($70,000.00), inclusive of attorneys' fees, in consideration for and in full satisfaction of the Released Claims, through the date of his execution of the Agreement. Such payments shall be allocated as follows:

2.1.    As a first installment payment, within five (5) business days of the Effective Date of this Agreement (the "Initial Payment Date"), Defendants shall deliver or cause to be delivered checks as follows:

2.1.1.  A check made payable to "Roberto Santos Guzman" in the amount of Eleven Thousand, Five Hundred Fifty-Nine Dollars and Ninety-Five Cents ($11,559.95), less applicable taxes and withholdings, which shall be itemized on a payroll check stub, representing back wages Guzman alleges he is owed, and as to which Defendants shall issue an IRS Form W-2 to Guzman for the year in which payment is made. Applicable taxes and withholdings shall be based on published withholding tables using an annual payroll period;

2.1.2.  A check made payable to "Roberto Santos Guzman" in the amount of Eleven Thousand, Five Hundred Fifty-Nine Dollars and Ninety-Five Cents ($11,559.95), without deductions, withholdings and/or setoff, representing liquidated and other damages Guzman alleges he is owed, as to which Defendants shall issue an IRS Form 1099 (Box 3) to Guzman;

2.1.3.  A check made payable to "Rapaport Law Firm, PLLC" ("RLF"), as and for RLF's court-approved legal fees and disbursements, in the amount of Six Thousand, Four Hundred Forty-Six Dollars and Thirty Cents ($6,446.30), as to which Defendants shall issue an IRS Form 1099-MISC to RLF; and

2.1.4.  A check made payable to "Miller Law, PLLC" ("MLP"), as and for MLP's court-approved legal fees, in the amount of Five Thousand, Seven Hundred Seventy-One Dollars and Thirty Cents ($5,771.30), as to which Defendants shall issue an IRS Form 1099-MISC to MLP.

2.2.    As a second and final installment payment, without limitation, all claims arising under the FLSA or NYLL, within thirty (30) days after the Initial Payment Date, Defendants shall deliver or cause to be delivered checks as follows:

    2.2.1.    A check made payable to "Roberto Santos Guzman" in the amount of Eleven Thousand, Five Hundred Fifty-Nine Dollars and Ninety-Five Cents ($11,559.95), less applicable taxes and withholdings, which shall be be itemized on a payroll check stub, representing back wages Guzman alleges he is owed, and as to which Defendants shall issue an IRS Form W-2 to Guzman for the year in which payment is made. Applicable taxes and withholdings shall be based on published withholding tables using an annual payroll period;

    2.2.2.    A check made payable to "Roberto Santos Guzman" in the amount of Eleven Thousand, Five Hundred Fifty-Nine Dollars and Ninety-Five Cents ($11,559.95), without deductions, withholdings and/or setoff, representing liquidated and other damages Guzman alleges he is owed, as to which Defendants shall issue an IRS Form l099 (Box 3) to Guzman;

    2.2.3.    A check made payable to "Rapaport Law Firm, PLLC", as and for RLF's court-approved legal fees, in the amount of Five Thousand, Seven Hundred Seventy-One Dollars and Thirty Cents ($5,771.30), as to which Defendants shall issue an IRS Form 1099-MISC to RLF; and

    2.2.4.    A check made payable to "Miller Law, PLLC" ("MLP"), as and for MLP's court-approved legal fees, in the amount of Five Thousand, Seven Hundred Seventy-One Dollars ($5,771.30), as to which Defendants issue an IRS Form 1099-MISC to MLP.

2.3.    All payments set forth in Paragraphs 2.1 through 2.2 above will be sent to Plaintiff care of the Rapaport Law Firm, PLLC, 80 Eighth Avenue, Suite 206, New York, New York 10011, no later than the dates specified herein.

2.4.    **Notice of Default and Right to Cure.** In the event that any payment due as set forth in Paragraphs 2.1 through 2.2 above is not received by the close of business on the final date set forth herein for such payment, or, provided that the payment date falls on a weekend or holiday, before the close of business on the next following business day, Plaintiff's counsel shall serve a written notice via email ("Notice of Default") upon counsel for the Defendants, Daniel W. Morris, Esq. ("Defendants' Counsel"), as specified herein, and Defendants shall have ten (10) business days from receipt of same to cure the default by making such payment. If Defendants do not cure their default within said ten-business day period, Plaintiff shall be entitled to enter judgment for the entire amount due and owing, with interest to commence as of the date of default at a rate of 10% per annum on the balance due, for which Defendants shall be jointly and severally responsible. Guzman shall also have the right to recover reasonable attorneys' fees to be determined by the Court, as well as costs and disbursements, incurred in enforcing

the payment obligations under this Agreement. The Court shall retain jurisdiction for the purposes of enforcing this Agreement, including the issuance of a judgment in the event of a default in payment by Defendants.

2.5. **Indemnification.** Plaintiff shall be solely responsible for the payment of all local, state and federal taxes, interest, penalties and other liabilities or costs that may be assessed in connection with the settlement sum set forth in Paragraph 2 and its subparts above. Plaintiff further agrees to indemnify and hold Defendants harmless against the payment of any employee-side taxes, interest, penalties and other liabilities or costs that may be assessed by the Internal Revenue Service, or any other taxing authority and/or any other governmental agency (whether federal, state, or local), as a result of any failure by Plaintiff to report to the proper taxing authorities, or any failure by Plaintiff to pay income taxes on, the payments described in this Paragraph 2 and its subparts above, and/or any prior payment received from Defendants, provided that Defendants, and not Plaintiff, are responsible for any tax liabilities, payments, costs, interest and penalties concerning the Defendants' portion of any tax withholding obligations. Plaintiff acknowledges that he has not relied on any oral or other representations made by Defendants or their counsel regarding the tax consequences of any of the amounts paid pursuant to this Agreement. Plaintiff further acknowledges and agrees that neither Defendants nor counsel for Defendants, have provided any advice whatsoever on the taxability of the foregoing settlement payments to Plaintiff.

**3.     No Consideration Absent Execution of this Agreement.** Plaintiff understands and agrees that Plaintiff would not receive the monies specified in Paragraph 2 or its subparts above, except for Plaintiff's execution of this Agreement and his fulfillment of the promises contained herein.

**4.     Limited Release of Claims.**

4.1. Plaintiff, for his heirs, executors, administrators, successors and assigns, hereby voluntarily releases and forever discharges the Releasees of and from the Released Claims.

4.2. The release and waiver of claims as against the Releasees described in Paragraph 4.1 extends only to persons or entities acting on behalf of or in privity with Defendants themselves, and as to such persons or entities, is limited only to claims arising from actions taken in their capacity as such.

4.3. Plaintiff is not waiving the right to vested benefits under the written terms of any pension or welfare benefit plan, if any, claims for unemployment or workers' compensation benefits, any medical claim or any judgment or monetary awards or settlements that may arise related to medical benefits under any benefit plan sponsored by Defendants, claims arising after the date on which Plaintiff signs this Agreement, or claims that are not otherwise waivable under applicable law.

4.4.   Provided that this Agreement is approved by the Court, Plaintiff agrees that his counsel will sign and return the Stipulation and Order of Final Dismissal with Prejudice (the "Stipulation", a copy of which is attached to this Agreement as Exhibit "A") to Defendants' Counsel within five (5) calendar days if necessary to effectuate the dismissal of the Lawsuit. Plaintiff is unaware of any other lawsuit involving Plaintiff and any of the Defendants or Releasees. In the event that there are any such claims or proceedings, Plaintiff shall take reasonable measures to withdraw and/or discontinue any other complaint, lawsuit, action, cause of action, administrative charge, claim, controversy, demand, grievance or proceeding (unless such proceeding is a class action in which case Plaintiff agrees to "opt out" of the class and not to participate in the class action) against the Releasees. In the event that, for any reason, any complaint, lawsuit, action, cause of action, administrative charge, claim, controversy, demand, grievance or proceeding covered by this Paragraph 4 is or remains pending or is instituted on their behalf, Plaintiff agrees: (i) to ask each agency or court with which any such matter is instituted and/or pending to enter an order, without appearance by either party, fully and finally withdrawing the matter and dismissing it with prejudice, and any such orders shall be attached to and become a part of this Agreement; (ii) to not, unless required by law to do so (and then subject to the terms of this paragraph), participate or request others to participate on their behalf in any such proceeding or litigation arising therefrom or associated therewith; and (iii) in no event, from any such source or proceeding whatsoever, to seek or in any way to obtain or accept any monetary award, recovery, settlement or relief therefrom. Provided, however, that nothing set forth in this article and/or otherwise in this Agreement shall in any way limit, restrict, impair or otherwise restrict Plaintiff from enforcing this Agreement, including, but not limited to, filing court and/or other legal proceedings to enforce Defendants' payment obligations set forth hereinabove.

4.5.   Provided that this Agreement is approved by the Court, Defendants release and discharge Plaintiff from all compulsory counterclaims, whether actually asserted or not, related to the Lawsuit.

**5.   Limitations on the Plaintiff's Release of Claims.** For the avoidance of doubt, the Release in Paragraph 4 of this Agreement is limited by the following:

5.1.   Nothing in this Agreement restricts or prohibits anyone from (i) complying with a lawful subpoena or other legal process, or (ii) initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Plaintiff is waiving his right to receive any individual monetary

relief from the Releasees resulting from such claims or conduct, regardless of whether Plaintiff or another party has filed them, and in the event Plaintiff obtains such monetary relief the Releasees will be entitled to an offset for the payments made pursuant to this Agreement. This Agreement does not limit Plaintiff's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law.

5.2.    This Agreement does not release the Parties from their obligations under this Agreement. Any Party may bring a claim for breach of this Agreement. If any Party brings any claim or action for breach of this Agreement or to enforce its respective rights under this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs that they incur in connection therewith, and any other remedies available at law.

6.    **Further Procedure.** After this Agreement and the Stipulation of Dismissal are fully-executed by the Parties and their counsel, subject to Defendants' review of and consent to the motion for judicial approval of the settlement, Plaintiff will submit the Agreement and Stipulation to the Court on behalf of the Parties for the Court's consideration and approval. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. The Court's approval of all provisions of this Agreement is a material term of this Agreement. In the event that the Court does not approve this Agreement, the Parties jointly agree to cooperate in renegotiating and seeking the Court's approval of an enforceable written settlement agreement that honors the Parties' agreement in principle as set forth herein.

7.    **Notices.** All notices and other communications related to this Agreement shall be in writing and shall be given by email and hand delivery to the other party or by email and registered or certified mail, return receipt requested, postage prepaid, or reputable overnight courier (such as Federal Express or UPS). Unless another address is provided to the other Party in writing, notice shall be given:

**To Plaintiff:** c/o Marc A. Rapaport & Meredith R. Miller

Rapaport Law Firm, PLLC
80 Eighth Avenue, Suite 206
New York, NY 10011
mrapaport@rapaportlaw.com

Miller Law, PLLC
167 Madison Avenue, Suite 503
New York, NY 10016
meredith@millerlaw.nyc

**To Defendants:** c/o Daniel W. Morris

Clifton Budd & DeMaria, LLP
350 Fifth Avenue, 61st Fl
New York, NY 10118
dwmorris@cbdm.com

8.    **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state of New York without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, any party may institute

an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Provided that this Agreement is approved by the Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015), should any provision of this Agreement thereafter be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the release language and Defendants' payment obligations, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

**9.    No Admission of Wrongdoing.** The Parties agree that neither this Agreement, nor the furnishing of the consideration for this Agreement, nor otherwise complying with its terms, shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**10.    No Disparagement**.

10.1.    In consideration of the Defendants' undertakings contained in this Agreement, Plaintiff agrees that he and his agents, family and/or representatives shall refrain from: (1) all conduct, verbal or otherwise, which would materially damage the reputation, goodwill or standing in the communities of the Releasees, and (2) referring to or in any way commenting on any of the Releasees in or through the general media or any public domain (including without limitation, internet websites, blogs, chat rooms, social media and the like), in a way that would materially damage the reputation, goodwill or standing in the communities of the Releasees, unless compelled to do so by legal process.

10.2.    In consideration of the Plaintiff's undertakings contained in this Agreement, Defendants agree that Defendants' officers and employees Scott Morgan and Clyda Bell shall refrain from: (1) all conduct, verbal or otherwise, which would materially damage Plaintiff's reputation, goodwill or standing in the community, and (2) referring to or in any way commenting on Plaintiff in or through the general media or any public domain (including without limitation, internet websites, blogs, chat rooms and the like), in a way that would materially damage Plaintiff's reputation, goodwill or standing in the community, unless compelled to do so by legal process.

10.3.    The Parties acknowledge and agree that the prohibitions in these Paragraphs 10.1 and 10.2 extend to statements, written or verbal, made to anyone, including but not limited to, the news media, competitors, employees (past and present), clients, etc., with respect to Defendants and Plaintiff.

10.4.    The "no disparagement" provisions of this Paragraph 11 do not apply to prevent the Plaintiff from making truthful statements of the underlying facts and circumstances of any claims in this action, or truthful statements regarding his experiences in the Litigation.

**11.    Neutral Reference.** The Parties agree that in response to all employment verification requests for Plaintiff, Defendants shall provide only information regarding Plaintiff's location of work, dates of employment, and last position held, and, if further requests are posed,

state that it is company policy not to provide any other information. Any requests for references are to be directed to Clyda Bell, The Morgan Group LLC, 1 Sound Shore Drive, Suite 203, Greenwich, CT 06830.

**12.    Strict Compliance.** The failure of any Party to insist upon strict compliance with any provision of this Agreement, or the failure to assert any right any Party may have hereunder, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

**13.    Amendment.** This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

**14.    Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiff acknowledges that he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement.

**15.    Section Headings.** Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

**16.    Legal Fees.** Except as provided for in this Agreement, each party will be responsible for its own legal fees or costs, if any, incurred in connection with the negotiation, settlement and delivery of this Agreement.

**17.    Counterparts.** This Agreement may be executed in counterparts with all counterparts constituting the entire Agreement and with the same full force and effect as if this Agreement were not executed in counterparts. Electronic and facsimile signatures, including via DocuSign, shall be deemed as originals.

**18.    Joint Participation in Preparation of Agreement.** The Parties participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

**19.    Severability and Modification.** If any provision of this Agreement is declared illegal or unenforceable by this Court, Plaintiff and Defendants agree that this Court has the full discretion to interpret or modify all such provisions to be enforceable and is directed to do so. In the event this Court declares the Releases unenforceable and cannot modify the Releases to become enforceable, the Parties jointly agree to cooperate in renegotiating and seeking the Court's approval of an enforceable written settlement agreement that honors the Parties' agreement in principle as set forth herein.

**20.    Competency to Waive Claims.** At the time of considering or executing this Agreement, Plaintiff was not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired. Plaintiff is competent to execute this Agreement.

**21.    Acknowledgments and Affirmations.**

21.1.    Plaintiff affirms that in the Lawsuit he has asserted a claim seeking unpaid wages or overtime pay under the Fair Labor Standards Act, the New York State Labor Law, and/or any other law, regulation or basis, and affirms that there is a *bona fide* dispute as to such FLSA claims which are being settled and released by this Agreement. Plaintiff believes that this settlement is fair and reasonable, and authorizes his attorney to seek from the Court approval of the settlement as fair and reasonable under the FLSA, and dismissal of the Lawsuit with prejudice;

21.2.    Plaintiff acknowledges that, except as to any amounts which might be vested and come due under employee benefit plans governed by ERISA or non-qualified deferred compensation, or under the terms of any insurance policies, if any, which may remain in effect for Plaintiff, Defendants do not owe Plaintiff any further compensation, overtime compensation, bonus, incentive compensation, accrued vacation pay or monies of any kind; and

21.3.    The payments provided for above fully and completely settle all claims by Plaintiff and Plaintiff's counsel against Releasees for attorneys' fees, costs, disbursements and the like.

21.4.    Plaintiff acknowledges and agrees that (i) he is represented by Miller Law, PLLC, and Rapaport Law Firm, PLLC, (ii) he is satisfied with his attorneys' representation of him in this matter, and (iii) his attorneys used their best efforts to pursue and resolve the disputes between Plaintiff and the Releasees in a manner that is fair to Plaintiff's interests. Plaintiff also represents and agrees that he discussed all aspects of his claims and allegations and this Agreement with his counsel, has been fully advised by his counsel as to his rights, understands that he is waiving significant legal rights by signing this Agreement, and enters into this Agreement voluntarily, with the full understanding of the Agreement and all of its terms.

*[Remainder of Page Intentionally Left Blank]*

PLEASE READ CAREFULLY. THIS AGREEMENT IS A LEGAL DOCUMENT AND INCLUDES A RELEASE OF CLAIMS AS SET FORTH HEREIN, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL CLAIMS ARISING UNDER ALL FEDERAL, STATE AND/OR LOCAL LAWS THAT WERE OR COULD HAVE BEEN RAISED IN THIS ACTION.

BY SIGNING THIS AGREEMENT, PLAINTIFF ACKNOWLEDGES AND AFFIRMS THAT HE IS COMPETENT TO ENTER INTO THIS AGREEMENT, THAT HE HAS READ AND UNDERSTANDS AND ACCEPTS THAT THE RELEASE HEREIN WILL FULLY AND FINALLY WAIVE AND RELEASE THE RELEASED CLAIMS, THAT NO REPRESENTATIONS, PROMISES OR INDUCEMENTS HAVE BEEN MADE TO HIM EXCEPT AS SET FORTH IN THIS AGREEMENT, THAT THIS AGREEMENT IS WRITTEN IN A MANNER AND A LANGUAGE THAT IS UNDERSTANDABLE TO HIM, AND THAT HE HAS SIGNED THIS AGREEMENT FREELY AND VOLUNTARILY, INTENDING TO BE LEGALLY BOUND BY ITS TERMS, WITHOUT ANY DURESS OR COERCION, AND WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Negotiated Settlement Agreement and Mutual General Release as of the date set forth below:

Dated:  New York, New York  
03-21, 2023

SIGNED AND AGREED TO BY:

_____  
ROBERTO SANTOS GUZMAN

STATE OF NEW YORK     )  
                      ) ss.:  
COUNTY OF New York    )

On MARCH 21, 2023, before me personally appeared Roberto Santos Guzman, known to me to be the individual whose name is subscribed therein, and executed the foregoing Negotiated Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____  
Notary Public

MARC A. RAPAPORT

[Remainder of Page Intentionally Left Blank]

MARC A. RAPAPORT  
NOTARY PUBLIC, State of New York  
Re. No. 02RA5029413  
Qualified in New York County  
Commission Expires June 20, 2026

- 11 -

Dated:    Greenwich, Connecticut    THE MORGAN GROUP LLC:
               3/21, 2023

By:

Name: _Scott Morgan_

Title: _M. W_

Dated:    Greenwich, Connecticut    600 TRINITY LLC
               7/24, 2023

By:

Name: _Scott Morgan_

Title: _M. W_

Dated:    Greenwich, Connecticut    SCOTT MORGAN
               3/24, 2023

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ROBERTO SANTOS GUZMAN,

                        Plaintiff,

        -v.-

THE MORGAN GROUP LLC a/k/a MORGAN
GROUP and a/k/a MORGAN GROUP LLC,
600 TRINITY LLC, and SCOTT MORGAN,

                        Defendants.
-------------------------------------------------------------------x

**STIPULATION AND ORDER
OF FINAL DISMISSAL WITH
PREJUDICE**

Case 1:22-cv-07271 (KPF)

      **IT IS HEREBY STIPULATED AND AGREED**, by and between the
undersigned attorneys of record for the parties to the above-entitled action, that the Negotiated
Settlement Agreement and Release in this matter having been reviewed by the Court and found to
be fair and reasonable, that the above-captioned action and all claims therein shall be dismissed in
its entirety, with prejudice, in accordance with the terms of the Negotiated Settlement Agreement
and Release.

      **IT IS FURTHER STIPULATED AND AGREED** that the Court shall retain
jurisdiction over this action to interpret and enforce the Negotiated Settlement Agreement and
Release entered into by the parties.

**IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in counterparts, and that a facsimile or electronic signature on this Stipulation shall have the same force and effect as an original signature.

MILLER LAW, PLLC and
RAPAPORT LAW FIRM, PLLC
*Attorneys for Plaintiffs*

CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendants*

By: _____

By: _____

Meredith R. Miller, Esq.
167 Madison Ave, Suite 503
New York, New York 10016
(347) 878-2587
meredith@millerlaw.nyc

Daniel W. Morris, Esq.
Stephen P. Pischl, Esq.
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410 (tel.)
dwmorris@cbdm.com
sppischl@cbdm.com

Marc A. Rapaport, Esq.
80 Eighth Avenue, Suite 206
New York, New York 10011
(212) 382-1600
mrapaport@rapaportlaw.com

Dated:   New York, New York
_____, 2023

Dated:   New York, New York
__ March 21 __, 2023

SO ORDERED on this _____ __ day of _____, 20_____.

_____
Hon. Katharine Polk Failla
United States District Judge